**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CARLOS BECERRA RESTREPO, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:09-CR-25-TCB-JSA-6 |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | CIVIL ACTION NO. |
| | : | 1:15-CV-699-TCB-JSA |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

In the instant § 2255 motion, Movant seeks to challenge the constitutionality of his sentence, which was imposed on March 6, 2014, following a guilty plea entered in the Northern District of Georgia.  (Docs. 494, 505).

I.    Procedural History

Petitioner and several co-defendants were indicted by a grand jury in the Northern District of Georgia and charged with 144 counts in connection with a conspiracy to launder money from the purchase and sale of drugs all over the world.  (Doc. 1).  On November 14, 2013, Movant, represented by Howard Manchel and aided by a court interpreter, entered a guilty plea to a single count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956, and, in connection with the plea, the Government agreed to dismiss the remaining counts, or a total of eighty-one charges against him.  (Docs. 494, 583 at 3, 10-13).  The plea agreement contains a waiver of Movant's appellate and collateral rights. (Doc. 494, Att. 1 at 8-9).  On March 6, 2014, United States District Judge Timothy

C. Batten, Sr. sentenced Movant to 100 months of imprisonment to be followed by three years of supervised release.  (Doc. 505).  Movant filed a *pro se* § 2255 motion in this Court on March 3, 2015.[1]  As far as the Court could glean from the motion, Movant raised the following claims:

> (1)    Movant's counsel was constitutionally ineffective for failing to:
>
>> (a)    file an appeal after Movant requested him to do so;
>>
>> (b)    get a reduction in Movant's sentence for acceptance of responsibility; and
>>
>> (c)    never providing Movant with written plea documents translated into Spanish; and
>
> (2)    Movant did not receive credit for the time he spent in prison in Colombia.

(Doc. 569).

Because the record of the case did not conclusively demonstrate what, if any, communications occurred between Movant and his attorney regarding any appeal, the undersigned believed it prudent to hold a limited evidentiary hearing as to whether Movant's counsel failed to follow Movant's instruction to file an appeal.  (Doc. 590).  The undersigned appointed counsel for Movant, granted his

---

[1] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a § 2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing (*i.e.*, signed).  *See Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008); *Rodriguez v. United States*, 279 F. App'x 753, 753 (11th Cir. 2008).

2

subsequent motion to amend the § 2255 petition to more clearly allege the claim this Court enumerated as Ground 1(c) *supra*, – *i.e.*, that Movant's plea was not entered into freely and voluntarily because his counsel did not provide him with translated plea documents – and to expand the evidentiary hearing to include that amended claim. (Docs. 597, 603). As relief, Movant asks this Court to vacate and reinstate his sentence so that he may file an out-of-time appeal or alternatively, vacate his conviction because it was not entered into voluntarily. (Doc. 614). The undersigned held an evidentiary hearing on January 26, 2016, during which Movant and his former attorney, Howard Manchel, testified.

For the following reasons, the undersigned **RECOMMENDS** that the motion to vacate [Docs. 569, 597] be **DENIED**.

II.     Applicable Law

A.     Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was

3

without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack."  *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989).  As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is entitled to no relief in connection with any of his claims.  Thus, no evidentiary hearing is required.

B.    Ineffective Assistance of Counsel

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).  "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient,

4

and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process," *Id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant]

cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

III.   Analysis

The Government argues that: (1) the record clearly contradicts Movant's claims in Grounds 1(b) and 2 (as enumerated by the undersigned in Section I); (2) Movant did not receive ineffective assistance of counsel based on counsel's failure to provide Movant with the written plea documents translated into Spanish, and thus Movant's plea cannot be rendered involuntary based on that failure; and (3) Movant did not receive ineffective assistance of counsel in connection with his appellate rights because Movant never asked counsel to file an appeal and counsel did not have a constitutional duty to consult with Movant about his appellate rights. The undersigned agrees with the Government.

6

A.     Claims That Did Not Require An Evidentiary Hearing And Are
       Affirmatively Contradicted By The Record.

In Ground 1(b), Movant argues that counsel was constitutionally ineffective because counsel failed to secure a reduction in Movant's sentence based on his acceptance of responsibility. (Doc. 569 at 8). In Ground 2, Movant claims that he did not receive credit for the seven months he served in a Colombian prison. (*Id.* at 6). The record of this case, however, affirmatively contradicts both of these claims.

Indeed, Movant did, in fact, receive a three-level acceptance of responsibility reduction pursuant to § 3E1.1(a) and (b) of the Sentencing Guidelines. (PSR at 6, ¶ 24; Doc. 584 at 2). And the record is clear that Movant also received credit for the time he spent in the Colombian prison.[2] (Doc. 584 at 3, 7, 21; Doc. 505 at 2). Accordingly, Grounds 1(b) and 2 are without merit.

_____

[2] Movant testified that he expected his attorney to ask for and receive double credit (or fourteen months) for the time he spent in the Colombian prison, and Manchel "promised" him he would do so. (Doc. 607 at 33-34). As will be discussed later in Sections III.C. and III.D., however, although the Government asked for a sentence at the lowest end of the guideline range (or 135 months) minus eight months of credit for the time Movant spent in the Colombian prison, during sentencing Movant's counsel showed the Court video evidence of the deplorable conditions in the Colombia prison, and ultimately the Court sentenced Movant to more than two years less than the Government's request and thirty-five months less than the lowest end of Movant's sentencing guideline range.

B.     Evidence Presented at the Evidentiary Hearing

Movant, who was born in Medillin Colombia, does not speak much English. (Doc. 607 at 4).  During the evidentiary hearing, while aided by a court-certified interpreter, Movant testified that when his previous attorney, Howard Manchel, would meet with him, Manchel always brought an interpreter.  (*Id.* at 6).  Once Movant and Manchel eventually discussed the plea agreement in its various stages, the interpreter orally translated the plea agreement into Spanish for Movant; however, Manchel never provided Movant with a Spanish written translation thereof.  (Doc. 607 at 9-10).  Movant testified that he was concerned with the differences between what Judge Batten indicated to him during the plea hearing and what Manchel previously had told him in connection with both the rights that Movant was giving up as well as the penalties that he could potentially receive. (*Id.* at 11-12).  According to Movant, after sentencing he thought that he had received too much time in prison and he immediately expressed his dissatisfaction to Manchel and told Manchel that he had some questions about what had happened, and Manchel told Movant that they would talk later.  (*Id.* at 13). Movant wanted to appeal the sentence he received; however, Manchel never visited Movant after sentencing as he said he would.  (*Id.* at 14).

Manchel testified that he began to represent Movant in March of 2013, and that Manchel received and provided Movant with discovery materials from March

8

through May of 2013.  (Doc. 607 at 38-39).  It was during this time that Manchel discovered that the Government possessed recordings that depicted meetings between Movant and an informant during which Movant discussed large quantities of cocaine and money laundering.  (*Id.* at 40-41).  Manchel testified that he also learned that several witnesses present during those recorded meetings had entered into plea agreements and were willing to testify against Movant.  (*Id.* at 40-41).  Manchel told Movant that if he went to trial on all eighty-two counts against him, Movant would face a much longer amount of time in prison than for just the one money laundering count in the plea agreement.  (*Id.*).  Through his negotiations with the Government, Manchel secured an agreement that the Government would not seek guidelines enhancements for obstruction or for Movant's role in the offense, both of which could have significantly increased his sentence. (*Id.* at 42). The Government sent Manchel a proposed plea agreement in June of 2013 and from that time until close to the time when Movant entered his plea in November of 2013, Manchel continued to negotiate different versions of the plea agreement because Movant's case was complicated, and because Movant had specific demands that would change as Movant thought about the agreement and Manchel tried to be responsive to Movant's wishes.  (*Id.*).

When Manchel first started representing Movant he went over with Movant what would happen if he entered a plea, including the fact that he would be giving

9

up his appellate rights. (Doc. 607 at 44). Manchel testified that Movant was both aware of the appellate waiver in the plea agreement and of the fact that by entering his plea he was waiving his appellate rights. (*Id.* at 46).

Manchel met with Movant on November 1, 2013, and November 11, 2013, before Movant entered his plea, and at both of those meetings Ms. Alba Males, a court-certified interpreter, was present. (*Id.* at 43). Manchel indicated that during those meetings he never would have "promised" Movant that Movant would receive a particular sentence, including an alleged promise that he would secure double credit for the time Movant spent in the Colombian prison. (*Id.* at 44). During sentencing Manchel did, in fact, present video evidence of the deplorable conditions in that Colombian prison, as well as the conditions that his family currently was living under in Colombia. (*Id.* at 46).

Manchel was not sure if Movant ever asked him to have the plea documents translated into Spanish, but if he had done so Manchel would have told Movant that any such translation would not be paid for under the Criminal Justice Action ("CJA") Guidelines in the Northern District of Georgia. (Doc. 607 at 45). Throughout Manchel's representation of Movant, however, the interpreter read the entire plea agreement to Movant in Spanish on more than one occasion, and Movant never indicated to Manchel that he was having any difficulty understanding what the interpreter was telling him or understanding the material.

10

(*Id.* at 53, 56).  Manchel testified that based on his conversations with Movant, Movant understood what Manchel explained, they would have a "full interchange," Movant was not naive or foolish, and Movant was very interested and engaged in the process.  (Doc. 607 at 57).

Insofar as providing advice to Movant regarding what scenarios could occur if Movant decided to go to trial, Manchel really did not talk to Movant too much about those potential scenarios since Movant was fairly insistent throughout Manchel's representation of him that he wanted to resolve the case through a plea and did not want to go to trial.  (Doc. 607 at 53, 56.).  Immediately after sentencing when Manchel conferred with Movant, Movant seemed pleased and relieved with the below-guidelines sentence of 100 months.  (*Id.* at 47).  Manchel testified that after sentencing he would have told Movant that although Movant had the right to appeal Manchel did not think there would be any merit to any such appeal.  (*Id.*). Manchel would have left it up to Movant to contact him if even after that conversation Movant wanted to appeal; however, Movant never indicated to Manchel that he did, in fact, want to appeal.  (Doc. 607 at 47).

Finally, Alba Males, one of this Court's certified interpreters, testified that she accompanied Manchel to see Movant on two occasions close to the time that Movant entered his plea, and that she orally translated the entire plea agreement into Spanish to Movant during at least one of those meetings, but she believes that she probably did so during both.  (Doc. 607 at 63).  Both times Movant expressed

11

his clear understanding of the plea agreement, although he complained about the amount of charges and time that he faced. (Doc. 607 at 63-64). Despite those complaints, however, Movant indicated that he would, in fact, enter into the plea agreement that Ms. Males had interpreted for him. (*Id.* at 64). Ms. Males also testified that the Northern District of Georgia does not pay for interpreters to provide written translations of discovery and/or plea agreements under its CJA policy. (Doc. 607 at 64). Ms. Males reaffirmed Manchel's testimony that Manchel would answer any questions about the plea agreement that Movant raised through her translations. (*Id.*).

C.   Movant's Plea was Knowing and Voluntary.

Although the appellate waiver in Movant's plea agreement precludes both direct and collateral review of both his sentences and convictions, an appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement or waiver, or claims challenging the voluntariness of the plea. *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005). Thus, the undersigned must review Movant's claim that his plea was involuntary because Manchel failed to provide Movant with written translations of the plea agreement into Spanish. Movant's claim directly contradicts his sworn statements.

It is well settled that there is a strong presumption that statements made during the plea colloquy are true. *See Blackledge v. Allison*, 431 U.S. 63, 74

(1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008)*; Patel*, 252 F. App'x at 974.   Where, as here, a Movant's claim of ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false.  *Patel*, 252 F. App'x at 974-75.  Movant, however, has not met this burden.

During the plea hearing, Movant was provided with a court-appointed interpreter and swore that:  he entered the plea through his own free will; nobody forced or coerced him to plead guilty; and no one promised him anything other than what was contained in the written plea agreement.  (Doc. 583 at 8-10.). Additionally, Movant's sworn statements indicate that Movant understood that the maximum sentence he faced was twenty years of imprisonment and that he could not withdraw his plea even if he received a more severe sentence than the guideline range.  (*Id.* at 5-7).

Manchel was appointed by the Court under the CJA, and both he and Ms. Males testified that under the CJA policies of such appointments the Court does not pay for written translations of plea documents, that all of the relevant information in the plea documents was orally translated into Spanish for Movant on several occasions, any questions Movant may have had were answered by

13

Manchel through an interpreter (whether Ms. Males or another interpreter), and that Movant understood the plea documents. The undersigned is not persuaded by Movant's argument that Manchel at least should have engaged in a futile attempt to have the Court provide an exception to its standard operating procedure and pay for the Spanish-translated plea agreement, when never in Manchel's experience and knowledge has the Court ever paid for any such written translations. (Doc. 607 at 45). *See Diaz v. Secretary for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (concluding that a lawyer "is not ineffective for failure to raise a meritless argument"). Movant has therefore failed to demonstrate that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.

Regardless, Movant has never indicated that but for the failure of Manchel to provide him with plea documents translated into Spanish, he never would have entered into the guilty plea, and any such claim would not have been credible. Indeed, consistent with Movant's statements during the plea colloquy [Doc. 583 at 4], from the very beginning and consistently throughout Manchel's representation of Movant, Movant was insistent that he wanted to enter a plea and did not want to go to trial. Aside from the overwhelming evidence the Government would have presented at Movant's trial – including recordings of Movant discussing the laundering of money and significant amounts of drugs as well as several witnesses involved in the conspiracy willing to testify against

14

Movant – in connection with the plea the Government dismissed eighty-one additional counts against Movant, of which, if convicted by a jury, would have added considerable penalty to Movant's 100 month sentence.  (*See* Doc. 1). Likewise, Movant would not have received the benefit of a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), which also reduced his guideline range, and potentially would have an even higher guideline range based on obstruction and his role in the offense – both enhancements which Manchel negotiated for the Government not to request.[3]  And Movant was sentenced to a total of 100 months, nearly three years less than the lowest end of the applicatory guideline range of 135 to 168 months and over two years less than the Government's request – *i.e.*, the lowest end of the guideline range of 135 months minus eight months of credit for the time Movant spent in the Colombian prison.  Movant, therefore, also has failed to demonstrate that a decision to reject the plea agreement would have been rational under the circumstances.  *See Padilla*, 130 S. Ct. at 1485; *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (holding movant could not show prejudice – *i.e.*, that a rational person would have rejected the plea bargain – where by entering the plea his sentence was reduced by eight years); *United States v. Fisher*,

---

[3] Movant's obstruction conduct apparently is based on Movant's recorded conversations with a corrupt Colombian government official in which Movant was attempting to purchase documents indicating that the United States was seeking his arrest as well as several of his co-conspirators.  (Doc. 607 at 22-25, 41).

AO 72A
(Rev.8/82)

Nos. 5:12CV80545, 5:10CR00037, 2013 WL 1871275, at *5 (W.D. Va. May 3, 2013) (holding that movant did not demonstrate prejudice where the evidence against him was overwhelming and a rational defendant would not have rejected a plea agreement that provided him with a three-level reduction for acceptance of responsibility which significantly lowered his guideline range); *Segura v. Houston*, No. 2013 WL 425247, at *8 (D. Neb. Feb. 4, 2013) (holding no rational defendant would have rejected plea where four counts were dismissed in connection with the plea and therefore by entering the plea the defendant's sentence exposure was significantly reduced). Accordingly, Movant has not demonstrated that ineffective assistance of counsel rendered his plea anything other than knowing and voluntary, and Movant is not entitled to relief in connection with Ground 1(c).

D.   Counsel Was Not Ineffective With Regard to Movant's Appellate Rights.

In this Circuit, the right to appeal a criminal case is fundamental. *See Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir. 1972) (citations and quotations omitted).[4] When an attorney disregards instructions from a defendant to file an appeal, therefore, such disregard constitutes ineffective assistance of counsel *per se*. *Roe v. Flores-Ortega*, 528 U.S. 470, 477-86 (2000). This type of ineffective assistance claim also is analyzed under the two-pronged *Strickland* test.

---

[4] Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

16

*Id.* at 476-77.  Even assuming Movant's testimony at the evidentiary hearing was truthful that immediately after sentencing he expressed "dissatisfaction" with his sentence to Manchel and told Manchel that he had questions about what had happened at sentencing,[5] Movant never testified that he actually asked Manchel to file an appeal, and Manchel testified that Movant did not.

Thus here, where Movant did not specifically ask for an appeal, the first inquiry the Court must make is whether Manchel actually consulted with Movant about an appeal.  *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d at 1206.  Counsel's duty to consult with his client requires counsel to inform the defendant about the right to appeal, advise the defendant about the advantages and disadvantages of an appeal, and make a reasonable effort to determine whether the defendant wishes to pursue the appeal – regardless of the merits of such an appeal.  *Flores-Ortega*, 528 U.S. at 478; *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007).  If counsel did not adequately consult with the movant, the Court next must ask whether that constituted deficient performance – *i.e.*, whether under the circumstances of that particular case counsel had a constitutional duty to consult with the defendant about an appeal.  *Flores-Ortega*, 528 U.S. at 479; *Thompson*, 504 F.3d at 1207.

---

[5] On the other hand, Manchel's testimony that Movant appeared relieved and satisfied with the sentence appears much more credible, since Movant received twenty-seven months less than the Government requested and thirty-five months less than the lowest end of the sentencing guideline range.

17

As discussed previously in Section III.B., *supra*, Manchel testified that throughout his representation of Movant, Manchel went over with Movant that if Movant entered a plea he would be giving up his appellate rights, that Movant was aware of the appellate waiver in the plea agreement which was orally translated to him in Spanish on more than one occasion, and that Movant was aware that he was waiving his appellate rights when he entered into his plea.  After sentencing Manchel also would have told Movant that he did not think that there would be any merit to an appeal, but that Movant still had the right do do so, and that if Movant did, in fact, want to file an appeal he should contact Manchel, which Movant never did.

According to Manchel's testimony, therefore, Manchel satisfied the duty to consult with Movant about an appeal by discussing with Movant the rights Movant had under the appellate waiver, advising Movant about the advantages and disadvantages of an appeal, and making a reasonable effort to determine whether Movant wished to pursue an appeal.  Thus, the undersigned finds that Manchel did, in fact, consult with Movant about his appellate rights.

Even if the undersigned did not find that Manchel consulted with Movant about his appellate rights, however, the dispositive question in this case then would become "whether counsel's failure to consult with [Movant] itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478; *Ortero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007).  The answer still remains a resounding no.

18

Indeed, a criminal defense lawyer does not have a *per se* constitutional obligation to consult with his client about an appeal.  *See Flores-Ortega*, 528 U.S. at 479; *Otero*, 499 F.3d at 1270 ("We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient.").   Instead, the inquiry derives from *Strickland*, that is, whether counsel's assistance was reasonable considering all of the circumstances.  *Flores-Ortega*, 528 U.S. at 478; *Ortero*, 499 F.3d 1267.

Counsel has a constitutional duty to consult with a defendant about an appeal "when counsel has reason to think either:  (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Flores-Ortega*, 528 U.S. at 480; *see also Thompson*, 504 F.3d at 1207; *Otero*, 499 F.3d at 1270.  This inquiry turns on "highly relevant" factors, such as whether the defendant entered a guilty plea, whether he received the sentence he bargained for, and whether the plea agreement contained an appellate waiver.  *Flores-Ortega*, 528 U.S. at 480; *Otero*, 499 F.3d at 1270.

Here, as in *Otero*, Movant entered into a guilty plea, "which tends to indicate that he was interested in 'seek[ing] an end to judicial proceedings.'"  *Otero*, 499 F.3d at 1270 (quoting *Flores-Ortega*, 528 U.S. at 480).  Additionally, Movant's 100 month sentence was:  (1) thirty-five months less than the low end

19

of the calculated guideline range, and twenty-seven months less than the Government's request to sentence Movant to the lowest end of the guideline range minus eight months for the time Movant served in the Colombian prison; (2) twenty-one months less than even the amount of time he would have received had the Court given him the fourteen months double credit for the time he spent in the Colombian prison; (3) was considerably lower than the twenty-year statutory maximum; and (4) was significantly less than any sentence Movant would have received had he proceeded to trial and been convicted on the additional eighty-one counts without the benefit of a reduction for acceptance of responsibility and with a potential enhancement both for Movant's role in the offense and his alleged obstruction. Moreover, the plea agreement contained a valid and enforceable appellate waiver, which allowed Movant to appeal only under certain exceptions, none of which apply here. (Doc. 494, Att. 1 at 9-10). Similar to *Otero*, therefore, "on account of the plea agreement's broad appeal waiver, any appeal taken by [Movant] would have been frivolous and would have been an appeal that no rational defendant would have taken." *Otero*, 499 F.3d at 1271.

Finally, Movant testified at the evidentiary hearing that he expressed dissatisfaction with the sentence and had some questions for Manchel, but he never testified that he specifically asked Manchel to file an appeal or even that he demonstrated to Manchel that he was interested in appealing his below-guidelines and below-expectations sentence, and Manchel's version of the facts that Movant

20

seemed relieved and pleased with his sentence appears much more credible. For all these reasons, Manchel was not under a constitutional obligation to consult with Movant about an appeal. *See Devine v. United States*, 520 F.3d 1286, 1288-89 (11th Cir. 2008) (affirming district court's finding that counsel did not have an affirmative duty to consult with the defendant about an appeal because he had pled guilty, there were no nonfrivolous grounds for relief, his plea included an appeal waiver, the sentence was at the bottom of the guidelines, and he did not reasonably demonstrate to counsel that he was interested in appealing); *Otero*, 499 F.3d at 1271 ("Because no rational defendant in [the movant's] position would have sought to appeal in light of the broad appeal waiver, and because [the movant] did not communicate to his lawyer a desire to appeal, we conclude that [the movant's] lawyer was not under a constitutional obligation to consult [the movant] about an appeal."). Accordingly, Movant has not demonstrated ineffective assistance of counsel, and the instant motion to vacate should be denied.

21

IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Carlos Becerra Restrepo's motion to vacate sentence [Docs. 569, 597] be **DENIED WITH PREJUDICE**.

V.   Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion.   *See id.*   "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."   *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).   In other words, Movant need only demonstrate that "reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion of Movant's claims, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant did not demonstrate ineffective assistance of counsel, that he voluntarily entered into his plea, and/or that his other claims were without merit.  *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 4th day of May, 2016.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)